# CHARLESTON.

HUFFMAN VS. CALLISON, ADM'R. &C.

1873.
January
Term

JOS. A. HUFFMAN, DEFENDANT IN ERROR AND PLAIN-
TIFF IN THE ACTION, *against* OSCAR CALLISON, AD-
MINISTRATOR OF J. MARCUS ALDERSON DEC'D,
DEFENDANT IN THE ACTION AND PLAINTIFF
IN ERROR.

Decided February 25th, 1873.

### SYLLABUS.

1. A special plea reciting that the consideration of a bond is Confed-
erate Treasury notes issued by an illegal association to overthrow
the Government of the United States, and for no other considera-
tion whatever, presents an immaterial issue, and is rightly rejected.

2. A special replication to the plea of the statute of limitations which
does not allege the exact period of the war, or exactly how long
the courts were closed, when these facts are relied upon as an
avoidance, is bad, for that period only could be excepted from the
computation of time which might otherwise prove a bar: for it
should appear upon the face of the pleading that, after taking out
the excepted time, five years have not elapsed since the action ac-
crued. The replication by not stating the period, but leaving it
wholly in blank, does not present a certain issue.

3. To an action brought upon a bond or promissory note after the present Code of West Virginia went into operation on the 1st day April 1869, the 6th section of Chapter 104 applies; and consequently a special replication to the plea of the statute of limitations, that said statute was suspended in any county during the whole of the late war between the so-called Confederate States and the United States, presents an immaterial issue, and should be rejected.

4. Where the statute of limitations has been pleaded, the Court erred in refusing to give the following instruction: "If the jury believe from the evidence that more than five years elapsed from the day the note sued on fell due and become payable, until the institution of this suit, then it is barred by the statute of limitations."

The case is stated in the opinion of the Court.

*Davis* for Plaintiff in error.

The first question is as to the force of the statute of limitations. In any aspect of the case, the suit was brought after the 1st of April 1869, so that the Code governs. By the plain reading of the Code this action is barred; but the statute was suspended by the war, as the Plaintiff claims. The war may have suspended a statute that had an existence during war. But how the war could suspend that which did not exist, had no being, is something that has not been explained by the opposite party, although often asserted and maintained by the action of the Circuit Court. The war might suspend a statute that had been passed before the war. That the courts might hold that the statute did not run during the time in which a party could not sue, because the courts were closed, one can understand; but that the Legislature, after the war is over, having the war full in view during the passage of the act, as the law itself shows, and the Court should, in construing it, undertake to say that a *past* war had suspended the *post* war statute, is strange beyond comprehension.

Ch. J. Marshall says: "The spirit of an instrument is to be respected not less than its letter. Yet the spirit is to be collected chiefly from its words."—Sturges *vs.* Crowninshield, 4 Wheat., 122. In Blackford *vs.* Wade, 17 Ves., 94, Sir William Grant says: "Here is a statute

1873.
January
Term.

Huffman
v.
Callison,
Adm'r, &c.

which contains no exceptions whatever in favor of absentees; we are of opinion, therefore, that it is impossible by construction, to introduce that exception into the law." In Caperton vs. Martin, 4 W. Va., 152, the Court quote and approve Jackson vs. Samphire, 3 Peters, 290, wherein it is said, "it is within the undoubted power of the Legislature to pass recording acts and acts of limitations. Reasons of policy have lead to the adoption of laws of both descriptions, and their validity has not been questioned. The time and manner of adoption, the exceptions to them, the acts from which the time should begin to run, will generally depend on the discretion of the Legislature," not on the discretion of the courts.

Ch. J. Marshall says: "Whenever the situation of the party is such, as in the opinion of the Legislature, to furnish a motive for excepting him from the operation of the law, the Legislature has made the exception. It will be going far for the Court to add to those exceptions."—McIver vs. Ragan, 2 Wheat., 25; Lansdale vs. Brashear, 3 Mon., 330; South's heirs vs. Thomas' heirs, 7 Mon., 70–71; Conway Robinson, 1 Prac., 623, Chap. 105, sec. 1, says, the statute of limitations is not suspended except when the statute so declares. It is said in Hudson vs. Carey, 11 S. & R., 14, that to suspend it, the Court would be assuming legislative power. Now the statute has made provision for excluding the period of the war, when the suit was brought prior to the adoption of the Code.—Code, Chap. 136, sec. 4, page 643. Is it not, therefore, fair to presume that the Legislature intended what it said in the other sections? If the Legislature had made no provision for the war, there would be some plausibility in the argument, to say that during the Court-closed season the statute should not run. But here the Legislature has provided for the period of the war, and for the courts to go on and make further provision for that period, would be truly usurping legislative power. In sec. 6 of the act provision is made for a

1873.
January
Term.

Huffman
v.
Callison,
Adm'r, &c.

writing not under seal, executed before the passage of the act, to be barred in five years, but if executed after the passage of the act, to be barred in ten years. Thus showing that in the passage of this act, the Legislature contemplated the past as well as the future, and made such exceptions for the past as it deemed proper.—Tucker, 2 vol. page 175, Chap. 10, book 3, says; if the statute of limitations begins to run it never stops. Citing 4 Term R. 310; 6 Munf. 312, and 2 H. & M. 289, and South *vs.* Thomas, 7 Mon. ; Hanger *vs.* Abbot, 6 Wallace ; The Protecter, 9 Ib.; Stuart *vs.* Kahn, same book; U. S. *vs.* Willey, 11 Wallace, were all cases decided on acts anterior to the war—an act that might be suspended by the war and the closing of the courts. In the last named case the Court says, "if the courts are closed and that time computed, the creditor has not the time within which to bring his suit that the statute contemplated he should have." 11 Wal. And in all these cases, the reason given for suspending the statute, is that the statutory time is abridged by the closed courts, and that the creditor ought to have the time the statute contemplated. But in the case before the Court, the party has had the time contemplated by two statutes, to-wit : the Act of '49, and that of '69. That the Legislature had a right to alter the statute and change the time, I cite Caperton *vs.* Martin, 4 W. Va. 166; 4 Wend. 529, and *ex parte* McCardle, 6 Wallace. The Court will see that our statute is very different from the Act of Congress of March 2nd, 1867. That was an enabling act, as was that commented on in Caperton and Martin. But the act of 1869 is in part disabling. The first section says: "No person shall make any entry," &c.—Page 564 Code. And the sixth section says: "Every action shall be brought," &c., that is on a writing not under seal, executed before the the passage of the act, within five years, and if executed after that, within ten years from the time it fell due. On page 643, sec. 4 of the Code, the Legislature has provided

1873.
January
Term.

Huffman
v.
Callison,
Adm'r, &c.

for the period excluded from the statute of limitations. How then can the courts make a different period of exclusion?

But if I should be wrong in this proposition, the suit was not commenced as to Wallace Robinson until October 1870. The suit had been brought against Callison, who never was administrator. The error was discovered; the name of Callison stricken out, and that of Robinson substituted. The judgment is against Robinson, and he was not sued until the 15th of October 1870, the day the consent order was made, and that was more than five years after the courts were open.

But the replication does not make a distinct and traversable averment that the courts were closed, up to so late a period, that five years had not elapsed. We had a right to take issue on that proposition. The replication is immaterial.

*Mathews* and *Mathews*, for Defendant in error.

The court properly refused to instruct the jury that after the statute of limitations began to run, it ran until the order was made by consent, October 15th, 1870, striking out the name of O. Callison and inserting that of W. Robinson. After having consented that the suit should not be dismissed, the Defendant will not be permitted to claim advantages which he may suppose would have inured to him from its dismissal. The consent was tantamount to an agreement that the suit should proceed, and be treated in all respects, as if it had been instituted against Robinson, and no plea which would have been unavailing for Callison before the consent order, can avail for Robinson after that order has been made.

Whether Callison was ever the administrator was not made an issue by the pleadings, and the court will assume that he was the administrator when the action was instituted, and that Robinson afterwards became the adminis-

39

1873.
January
Term.

Huffman
v.
Callison,
Adm'r, &c.

trator, and had his name substituted in the proceedings for that of Callison.

7th. The period of the war is excepted from the time limited for the commencement of an action.—Chapelle vs. Olney, Law Times, U. S. Ct. R. February 1871, 30; Caperton vs. Martin, 4 W. Va. 138. "Insurrection and rebellion" existed in Greenbrier until April 2d, 1866.—See 4 W. Va. 148—149. The war ended in that county and elsewhere, except in Texas, April 2d, 1866.—See opinion of C. J. Chase, in the case of the "Protector," 12 Wallace, 700. If the war ended at the time it is immaterial whether the statute ceased to run when the suit was instituted or when the consent order was made, for from the 2d of April 1866, to the date of that order is four years, six months and thirteen days.

PAULL, Judge.

This was an action of debt brought in the Circuit Court of Greenbrier county by Joseph A. Huffman against Oscar Callison, Administrator of J. Marcus Alderson, on promissory note made by the latter, and bearing date on the 5th of November 1861, and becoming due twelve months after date.

The summons commencing this action was issued and bears teste on the 30th day of June 1869. At a term of the Court held on the 15th day of October 1870, by consent of parties, the name of Oscar Callison, as Administrator of J. Marcus Alderson was stricken out, and the name of Wallace Robinson, Administrator, was inserted instead. To the declaration in this case the Defendant filed the plea of payment, and four special pleas, as follows; the first, that the consideration of the note sued on was Confederate Treasury notes, issued by an illegal association hostile to the Government of the United States; the second was the plea of the statute of limitations, to-wit: that the cause of action, set out in

1873.
January
Term.

Huffman
v.
Callison,
Adm'r, &c.

Plaintiff's declaration, accrued more than five years before commencement of this suit ; the third was a plea of usury; and the fourth, that part of the consideration of the note sued on was Confederate Treasury notes, &c. Objection was made to the filing of the first and fourth pleas; but the objection was overruled and they were filed. General replication was filed, and issue joined on these pleas : issue was also joined on the third plea. To the second plea Plaintiff replied generally, and tendered two special replications, to the filing of which Defendant objected, which objection was sustained by the Court as to the first, and overruled as to the second of said replications, and permitted it to be filed; and the Defendant rejoined generally, and issue was joined. The first special replication sets out that the statute of limitations was suspended from April 17, 1861, to March 1, 1865, by an act of the Legislature of West Virginia, passed &c., and was rejected. The second replication sets out that the statute was suspended in the county of Greenbrier during the whole of the late war, to-wit: from the — day of —, 186-, to the — day of —, 186-, because the legal courts of said county were closed during said period, and was filed. Under this state of the pleadings a trial was had at a term of said Court in December 1871. During its progress five different instructions were asked by the Defendant, two of which were given, and three refused. Sundry exceptions were also made on the part of the Defendant to some of the Plaintiff's testimony ; the objections being overruled, and the evidence admitted, the jury found for the Plaintiff the debt in the declaration mentioned, and judgment was rendered for $571.65; and thereupon the defendant moved for a new trial, which motion was overruled, and the defendant excepted ; and thereupon an appeal is taken to this Court.

We proceed to notice briefly the points as they are presented in the record ; and first the Court erred in not sustaining the objection made to the filing of the first

1873.
January
Term.

Huffman
v.
Callison,
Adm'r, &c.

and fourth special pleas: for reasons given in the case of Mathew Harrison, Ex'r *vs*. The Farmers' Bank of Virginia at the present term, these pleas are deemed immaterial, and, though issue be joined on them and found for either party, may be disregarded. In the second place the Court did not err in rejecting the Plaintiff's first special replication to the second special plea, which merely presents a conclusion of law, of which he could have availed himself, if true, in some other form during the progress of the trial. The Court erred in admitting the Plaintiff's second replication, as it does not allege the exact period of the war, or exactly how long the courts were closed, for that period only could be excepted from the computation of time which might otherwise prove a bar; for it should appear on the face of the pleading that, after taking out the excepted time, five years have not elapsed since the action accrued. The replication, by not stating the period, but leaving it wholly in blank, does not present a *certain* issue. But again, and aside from this view, the subject matter of the replication springs from the principles of the common law, or perhaps, more accurately speaking, the principles of international law, which are designed to furnish relief to a creditor, by suspending the operation of the statute, when the doors of the courts have been closed, by the existence of war, and the ordinary remedies for the collection of debts could not be enforced. These principles are eminently just and right. In the case now before us however, the Legislature has intervened, and prescribed the rule for its government, and that of all other actions where brought within the limits of this State. I need not stop to prove that this is a matter wholly and peculiarly within the province and power of the Legislative department of the government. And the Legislature having given us its will, as found in the provisions of the Code, our only duty is to apply them to the case under consideration. During the period of the war differ-

1873.
January
Term.

Huffman
v.
Callison,
Adm'r, &c.

ent acts were passed for the relief of creditors, suspending the statute of limitations, excepting certain lengths of time, from its operation, and authorizing suits to be brought in counties other than those in which the debtors resided or might be found. And these statutes, or some of them, continued in force until the Code went into operation on the first day of April 1869. The first section of Chap. 166 repeals all preceding legislation upon this subject, and this, in connection with its other provisions, clearly manifests the legislative intent. The fourth section of chapter one hundred and thirty-six provides as follows : "In computing the time within which any action of debt, detinue, covenant, assumpsit, trover, trespass or case pending at the time this act takes effect, shall be barred by any statute of limitation, the period from the 17th day of April 1861, to the first day of March 1865, shall be excluded from such computation." The limitation to an action on a note in writing not under seal, before the war, was five years; but the fourth section extends that period nearly four years, so that an action pending on the first day of April 1869, would not be barred for nearly nine years. The period embraced by this section is the period of the war, designing to cover the disturbed and unsettled state of things during that time. The Legislature having given this measure of relief, and for this reason, to that class of creditors whose actions were pending on the first day of April 1869, adopted another and different rule as to actions brought *after* the first day of April 1869, prescribing that an action on a contract not under seal shall, if executed before that time, be barred in five years, but if executed after the passage of the act, in ten years. See sec. 6, Ch. 104 of the Code.

This legislation is explicit, and there is no mistaking its design or its application. The action in the case now before the Court, was brought on the 30th day of June 1869, after the Code went into operation, and is there-

1873.
January
Term.

Huffman
v.
Callison,
Adm'r, &c.

fore subject to the said 6th sec. of Chap. 104; the action is on a note executed on the 5th day of November 1861, and no action can be maintained upon it, unless brought within five years next after the right to bring the same shall have first accrued, if the Statute is pleaded.

In this view of the subject, the Plaintiff's second replication to the second plea is wholly immaterial, and though issue was joined upon it, it should be disregarded. This disposes of all the questions of pleading in the case; a general replication having been filed to the second plea, the parties are at issue on the plea of payment, and of usury, and of the statute of limitations; as to the first two pleas, there is no evidence whatever: as to the plea of the statute of limitations there is no evidence either, except the note which, when produced, proves the truth of the plea: that the action was not within five years after the right of action accrued. All the rest of the evidence certified in this case is wholly irrelevant to any one of these issues. The jury however, at the December Term 1871, on the trial, found a verdict for the Plaintiff, for the amount of his debt and the interest; and judgment was rendered for the same; Defendant moved the Court for a new trial, but the motion was refused; to this action of the Court, the Defendant excepted, and has taken an appeal to this Court. From what has been already said in the history of this case, and the discussion of its principles, it is manifest that the verdict and judgment are most clearly against the law and the evidence. During the trial four instructions were asked by the Defendant. The first two being wholly irrelevant to any issues in the cause, as I have endeavored to present them, I need not consider them. The third instruction is this: "If the jury believe from the evidence that more than five years elapsed from the day the note sued on fell due and became payable, until the institution of this suit, then it is barred by the statute of limitations." This instruction the Court refused; the refusal was error; the

1873.
January
Term.

Huffman
v.
Callison,
Adm'r, &c.

instruction was pertinent to the issue, and should have been given. The fourth instruction is this: "The Court instructs the jury that after the statute of limitations began to run, it ran on until the day the order was made in this suit, whereby the name of Oscar Callison was stricken out, and the name of Wallace Robinson inserted, as the Administrator of John Marcus Alderson." This instruction was refused. The effect of this instruction was to fix the 15th day of October 1870, as the time when the suit was commenced against Wallace Robinson, and of course a different time during which the Statute would operate as against Oscar Callison. In this view, the instruction was properly refused. The order for the substitution of one name for the other was by consent of the parties in court, and should not be permitted to operate to the legal prejudice of either. There are exceptions taken by the Defendant to the testimony of certain witnesses, and this testimony is certified in the record; but as it is wholly irrelevant to the issues, as hereinbefore presented, they need not be considered. For the reasons hereinbefore stated the judgment of the Court below must be reversed, and the verdict of the jury set aside, and a new trial awarded; and the cause is remanded to the Circuit Court of Greenbrier county, for further proceedings to be had therein, in accordance with the principles of this opinion, and the Appellant must recover his costs in this Court against the Appellee.

HAYMOND, President, and MOORE, Judge, concur in this opinion.